In the Supreme Court of Georgia

Decided:   September 14, 2015

S15A0895. CRAWFORD v. THE STATE.

THOMPSON, Chief Justice.

Appellant Jeremy Crawford was found guilty along with his co-defendant William Lee Shelton of malice murder and robbery by force in connection with the death by strangulation and robbery of Matthew Proctor and was sentenced to life imprisonment.[1]  He appeals from the denial of his motion for new trial, and we affirm.

1.  Viewed in the light most favorable to the jury's verdict, the evidence

presented at trial revealed that appellant and Shelton were riding with the victim

<hr />

[1] The crimes occurred on or about January 18, 2002 and the victim's body was discovered on February 12, 2002.  Appellant was indicted by a Pike County grand jury on April 15, 2002, on charges of malice murder, felony murder and two counts of robbery by force.  Appellant was tried by a jury from December 2-4, 2002, and was found guilty of malice murder and two counts of robbery which the trial court later merged into one count of robbery by force.  On December 4, 2002, appellant was sentenced to life imprisonment for malice murder and received a consecutive twenty year sentence for robbery by force.  He filed a preliminary motion for new trial on January 2, 2003, and a Second Amended Motion for New Trial immediately prior to his hearing held September 5, 2014.  Following the denial of his motion for new trial by order entered September 29, 2014, appellant filed a notice of appeal on October 10, 2014.  The case was docketed in this Court for the April 2015 term and submitted for decision on the briefs.

in the victim's car when they stopped to look at a covered bridge in Meriwether County. After parking at the bridge, Shelton began strangling the victim with a rope while appellant beat him. Once the victim lost consciousness, the two men placed him in the trunk of his car and drove around Meriwether and Pike counties. At some point, they stopped at a restaurant where a friend, Shannon Giles, noticed blood on appellant's pants. Later that day, appellant and Shelton drove the car to Giles' house in Pike County. While there, appellant told Giles that he and Shelton had killed the victim. Appellant opened the trunk to show Giles the victim's body, at which time Giles heard sounds "like the air was coming out of [the victim's] lungs." According to Giles' testimony, appellant told her that after he and Shelton strangled and beat the victim at the bridge, they put the victim in the trunk and drove to appellant's mother's boyfriend's house where they "finished him off." Although Giles stated that appellant told her Shelton used a rope to strangle the victim, another witness testified that appellant told him Shelton had used a belt.

Thereafter, appellant and Shelton hid the victim's body under a boat on Giles' property for three days before retrieving the body and burying it in a Pike County sand pit. Two weeks later, Shelton was driving the victim's car when

2

he was involved in an accident. While investigating the accident, police officers discovered the victim's blood in the car's trunk, and further investigation led to the discovery of the victim's body in Pike County. Upon learning of the accident, appellant told two individuals that he and Shelton had killed the victim and stolen his car and money.

We conclude the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant claims the trial court committed reversible error when it allowed the State during closing argument to use a rope to demonstrate the act of strangulation followed by four minutes of timed silence representing the amount of time it allegedly took the victim to die.[2] Appellant objected to the State's demonstrations as irrelevant and inflammatory, but his objections were overruled by the trial court.

The State has broad latitude to demonstrate, as part of its closing

---

[2] After tying the rope around a bannister in the courtroom and tugging on it to illustrate the act of strangulation, the prosecutor ended her closing argument with four minutes of silence stating "[t]his is Matthew's four minutes."

3

argument, that which is authorized by the evidence. See Perry v. State, 274 Ga. 236, 239 (552 SE2d 798) (2001). Here, there was evidence presented showing that a rope may have been used to strangle the victim and that it would take a person approximately four minutes to die from strangulation. The State's demonstration, therefore, was authorized by the evidence presented at trial. As such a demonstration was not beyond the bounds of permissible argument, we find no abuse of discretion in the trial court's decision allowing the demonstration to proceed. See Norton v. State, 293 Ga. 332, 336 (745 SE2d 630) (2013); Braley v. State, 276 Ga. 47, 54 (572 SE2d 583) (2002).

3. Nor do we find merit to appellant's claim that the State failed to prove that venue in this case was proper in Pike County.[3] While venue is a jurisdictional fact the State must prove beyond a reasonable doubt in every criminal case, "the determination of whether venue has been established is an issue soundly within the province of the jury." Rouse v. State, 296 Ga. 213, 215 (765 SE2d 879) (2014). In cases involving criminal homicide, Georgia law

---

[3] We note that this sufficiency of the evidence issue was raised on appeal by appellant's co-defendant and was considered and rejected by this Court on the same evidence now before us. See Shelton v. State, 279 Ga. 161 (611 SE2d 11) (2005). We recently granted review of Shelton's habeas corpus case to address the question of whether the habeas court erred when it rejected Shelton's claim concerning the jury instruction on venue. See S15H1452. In the instant appeal, appellant has not enumerated any error regarding the jury instructions on venue.

provides with respect to venue:

> Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred. If a dead body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered.

OCGA § 17-2-2 ( c). Subsection (h) of this statute further provides:

> If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed.

Moreover, the State may establish venue by whatever means of proof are available to it and may use both direct and circumstantial evidence. See Jones v. State, 272 Ga. 900, 902-903 (537 SE2d 80) (2000).

Although there may have been conflicting evidence regarding in which county the victim's injuries were inflicted, it was undisputed that the victim's body was found in Pike County. Under these circumstances, the jury was authorized by the evidence to find beyond a reasonable doubt that venue was proper in Pike County. See Shelton, supra, 279 Ga. at 163.

Judgment affirmed. All the Justices concur.