301 Ga. 753
FINAL COPY


S17A1129. COLEMAN v. THE STATE.


MELTON, Presiding Justice.

Following a jury trial, Jordan Michael Coleman appeals his conviction for the malice murder of Alvin Hall and related crimes, contending, among other things, that there was insufficient evidence of venue and that he received ineffective assistance of trial counsel.[1] For the reasons set forth below, we

---

[1] Following an initial indictment on April 9, 2010, Coleman was re-indicted on April 5, 2013 for malice murder, felony murder predicated on aggravated assault, aggravated assault, false imprisonment, arson in the second degree, concealing the death of another, and possession of a firearm during the commission of a felony. Following a jury trial ending on April 18, 2013, Coleman was found guilty on all charges. On April 30, 2013, Coleman was sentenced to life imprisonment for malice murder; consecutive terms of ten years for false imprisonment, arson, and concealing the death of another; and five consecutive years for possession of a firearm. The charge of aggravated assault was merged for purposes of sentencing, and the conviction for felony murder was vacated by operation of law. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On May 8, 2013, Coleman filed a motion for new trial and amended it on March 20, 2015 and June 20, 2016. On August 31, 2016, the trial court denied the motion, and Coleman filed a timely notice of appeal. Thereafter, Coleman's case was assigned to the April 2017 term of this Court and submitted for decision on the briefs.

affirm.

1. In the light most favorable to the verdict, the record shows that, on the night of December 30, 2009, Newton County firefighters responded to a 911 call from Maria Clark about a car burning in a forested area behind her house. Hall's body was found in the trunk of the car. An autopsy revealed that Hall died of gunshot wounds before the fire had been deliberately set. Hall's phone records showed that the last call he received was from Candace Pope. Police interviewed Pope, who led them to Coleman.

Further investigation revealed that, on the Wednesday night that he was murdered, Hall had arranged a date with Pope. Pope knew that Hall kept money in a pouch under the seat of his car, and she enlisted Coleman and Brandon Hambrick to assist her in stealing it. Pursuant to a plan they had previously concocted, Pope was sitting in Hall's car with him when Coleman and Hambrick walked up. Coleman pointed a gun at Hall and made him get into the back seat. Coleman ordered Hall to give up his money, but Hall responded that he did not have any and that he would not "get any money on his [credit] card" until the following Monday. Coleman then bound Hall's hands with duct tape and forced him into the trunk of his own car.

2

Coleman, Hambrick, and Pope decided to hold Hall as their captive until he received money on the following Monday. As they were driving Hall to a place to hold him, the trunk of the car popped open, and Hall tried to run away. Coleman caught up with Hall, Hall struggled, and Coleman shot him twice. Coleman then put Hall in the trunk of the car, drove to a wooded cul de sac, and asked Pope to retrieve some gas. Pope returned with a gas can, and Coleman took the gas from her. He then went back to the wooded area where he had parked Hall's car, returned with the gas can, and told the others that things "had been taken care of." In January 2010, Coleman told Keisha Williams that he killed Hall after "things got crazy." Hambrick testified at trial that Coleman shot Hall twice.

This evidence was sufficient to enable the jury to find Coleman guilty of the crimes for which he was convicted beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Coleman nonetheless contends that there was insufficient evidence of venue in Newton County, where he was tried. We disagree.

The evidence of venue presented at trial was conflicting. The record shows that, after being arrested, Hambrick decided to speak with investigators. On

3

February 18, 2010, Hambrick described the area where Hall was shot as the same area in which the car was set on fire in Newton County. In a later interview, Hambrick said that the victim was shot in Scottdale, located in DeKalb County. At Coleman's trial, however, Hambrick testified unequivocally that the shooting occurred near the place where the car was burned in Newton County. Williams testified that Coleman had previously told her that he shot Hall at a house in DeKalb County. It was undisputed that the body was found in Newton County.

In murder cases, the manner in which venue is determined is set forth in OCGA § 17-2-2 (c). This provision

> sets forth a three-step process by which a jury in a criminal homicide case may reach a factual finding about where the crime was committed. First, according to the statutory rule, the jury is to determine from the facts presented at trial the county in which the cause of death was inflicted. Once that factual issue is determined, the homicide "shall be considered," as a matter of law, "as having been committed" in that county. If that is the county in which the accused is being tried, then proper venue has been established. If, however, the jury cannot determine where the cause of death was inflicted, the statute gives further instructions: it directs the jury to determine as a matter of fact the county in which the death occurred. Once that factual issue is determined, the homicide "shall be considered," as a matter of law, as having been committed in that county. If the jury can determine neither the county in which the cause of death was inflicted nor the county in which the death

4

occurred, then the jury is required to determine the county in which the dead body was discovered. Applying the venue statute, the homicide "shall be considered," as a matter of law, as having been committed in the county in which the body was discovered. Once the jury has determined from the facts presented, and pursuant to these substantive statutory rules, the location where the crime was committed, it can then determine whether proper venue has been established by the state.

(Footnote omitted.) Shelton v. Lee, 299 Ga. 350, 354-355 (2) (b) (788 SE2d 369) (2016). In the light most favorable to the verdict, Hambrick testified that he witnessed the shooting occur in Newton County. This testimony alone supports the jury's determination that venue in Newton County was proper, as the jury, as arbiter of fact and credibility, was authorized to reject contrary testimony. Moreover, if the jury had been unable to determine the actual county in which the cause of death was inflicted or death occurred due to the conflicting testimony, it is undisputed that Hall's body was found in Newton County. The evidence of venue was sufficient.

3. In a related enumeration of error, Coleman maintains that the trial court erred by instructing the jury regarding the option to find venue in the county where the body was found. Because there was conflicting evidence as to venue for Hall's murder, the trial court properly instructed the jurors regarding the

5

entirety of OCGA § 17-2-2 (c), including the exception allowing venue to be placed in the county in which the body was found if venue could not be otherwise determined. The trial court's charge was properly adjusted to the evidence presented at trial.

4. Coleman contends that his trial counsel rendered ineffective assistance by (a) failing to offer evidence from a competency evaluation indicating that Hambrick had a deal with the State to testify for a reduced sentence and (b) failing to adequately cross-examine witnesses concerning testimony given by Hambrick that had not been disclosed in discovery. We disagree with both contentions.

> In order to succeed on his claim of ineffective assistance, [Coleman] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

6

(a) Coleman maintains that evidence from a competency evaluation performed on Hambrick prior to trial showed that Hambrick must have had a deal with the State for his testimony.[2] Coleman further contends that his trial counsel was ineffective for failing to bring this information to the jury's attention. A review of the record, however, shows that Hambrick had no such deal. Hambrick testified on direct examination that neither he nor his attorney had made any deals with the State for his testimony, he had not been promised or offered anything at all, he was aware of the penalties of the charges against him, and he could be charged with perjury if he lied on the stand. At the hearing on Coleman's motion for new trial, Hambrick's attorney and the prosecutor who worked on both Pope's and Coleman's cases testified that Hambrick was never offered any plea deal until after Coleman's trial was completed. Given this evidence that Hambrick never had any deal prior to Coleman's trial, Coleman's trial counsel did not perform deficiently by failing to prove otherwise.

---

[2] Coleman points to the opinion of the psychologist who interviewed Hambrick that Hambrick seemed to have a thorough knowledge of the plea bargaining process. The psychologist testified that Hambrick indicated a general belief that he might get a deal if he cooperated with the State. There was no testimony that Hambrick actually had a deal or that any deal had been offered.

(b) Coleman contends that trial counsel rendered ineffective assistance by failing to adequately cross-examine witnesses concerning testimony given by Hambrick that had not been disclosed in discovery. Specifically, Coleman contends that, for the first time at trial, Hambrick stated that Coleman asked Pope to retrieve gasoline in order to set Hall's car on fire with his body inside the trunk. Coleman argues that this statement by Hambrick lacks credibility and that trial counsel inadequately questioned him about the testimony. In essence, Coleman argues that trial counsel should have somehow anticipated and been better prepared for this testimony despite the fact that Hambrick testified to it for the first time at trial. Trial attorneys, however, are not prognosticators, and the record shows that trial counsel thoroughly cross-examined Hambrick on the entirety of his testimony, pointing out numerous inconsistencies. Trial counsel also raised the issue of Hambrick's general credibility by introducing evidence of his convictions for prior crimes bearing on his veracity. Under such circumstances, it cannot be said that trial counsel's actions were unreasonable. Wright, supra, 291 Ga. at 870 (2). Therefore, Coleman's claim of ineffective assistance fails.

5. Finally, Coleman contends that the trial court should have granted him

a new trial because one of the assistant district attorneys who prosecuted his case  violated Rule 3.7 of the Georgia Rules of Professional Conduct by testifying as a witness at the hearing on his motion for new trial regarding the absence of a deal for Hambrick's testimony and then later filing a brief in opposition to Coleman's motion. This argument is misplaced.

At the motion for new trial hearing, the State called Senior Assistant District Attorney McGinley as a witness to testify regarding Coleman's contention that Hambrick had a deal to testify at the time of Coleman's trial.[3] McGinley testified that Hambrick was not offered any kind of plea deal until Coleman's trial had been completed. Hambrick's own attorney confirmed this testimony, and Hambrick stated, "I didn't say that they were going to give me a deal." Hambrick did testify, however, that he believed that he would get a deal for his cooperation, but there was no evidence that a deal actually existed– a fact confirmed by Hambrick's own attorney.

Rule 3.7 (a) of the Georgia Rules of Professional Conduct provides:

---

[3] At that time, McGinley had left his employment with the Alcovy Judicial Circuit and was employed by the DeKalb County District Attorney. After the hearing on the motion for new trial, McGinley returned to the Alcovy Judicial Circuit and worked on the brief in opposition to the motion for new trial.

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: 1. The testimony relates to an uncontested issue; 2. The testimony relates to the nature and value of legal services rendered in the case; or 3. Disqualification of the lawyer would work substantial hardship on the client. The maximum penalty for a violation of this Rule is a public reprimand.

There was no violation which would merit a new trial for Coleman. McGinley testified only with regard to the existence of a deal for Hambrick's testimony, and this testimony occurred after Coleman's jury trial concluded. We have previously observed that "[a] lawyer is . . . more likely to be allowed to serve as a witness and an advocate where his or her testimony concerns collateral matters heard outside the main trial, such as rebuttal testimony regarding a deal allegedly made by a prosecutor. See Lance v. State, 275 Ga. 11, 26 (36) (560 SE2d 663) (2002)." Martin v. State, 298 Ga. 259, 271 (2) (b) (779 SE2d 342) (2015). Therefore, "[n]one of the dangers inherent in having an attorney testify in court was present." (Citation omitted.) Lance, supra, 275 Ga. at 26 (36). There was no error.

Judgment affirmed. All the Justices concur.

Decided August 14, 2017.

Murder. Newton Superior Court. Before Judge Benton.

James S. Lewis, for appellant.

Layla H. Zon, District Attorney, Charles R. McMenomy, Randal M. McGinley, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.