304 Ga. 895
FINAL COPY

S18A1307.  HERNANDEZ v. THE STATE.

WARREN, Justice.

Christian de la Hernandez was convicted of malice murder, kidnapping, aggravated assault, kidnapping with bodily injury, and rape in connection with the shooting death of Jacqueline Ramon.  On appeal, Hernandez contends only that venue did not properly lie in DeKalb County.  Finding no error, we affirm.[1]

---

[1] The murder was committed on May 1, 2012.  On July 31, 2012, a DeKalb County grand jury indicted Hernandez for malice murder (Count 1), two counts of felony murder — one predicated on aggravated assault and the other on kidnapping (Counts 2 and 3, respectively), aggravated assault (Count 4), kidnapping (Count 5), aggravated assault (Count 6), kidnapping with bodily injury (Count 7),  and rape (Count 8).  After a trial held from June 11 to 14, 2013, a jury found Hernandez guilty on all counts.  The trial court sentenced Hernandez to life imprisonment without parole for malice murder (Count 1), 20 years consecutive for kidnapping (Count 5), 20 years consecutive for aggravated assault (Count 6), life for kidnapping with bodily injury (Count 7), and life without parole for rape (Count 8).  The trial court erroneously merged the two felony murder counts (Counts 2 and 3) and the aggravated assault count (Count 4) with the malice murder count.  Hernandez filed a timely motion for a new trial on June 19, 2013, and an amended motion for new trial on August 30, 2016.  A hearing was held on September 9, 2016, and the amended motion was denied on November 21, 2016.  In its order denying Hernandez's motion for new trial, the trial court corrected the sentencing error by vacating the two felony-murder counts (Counts 2 and 3) and determining that the remaining aggravated assault (Count 4) did not merge with the malice murder, and therefore that portion of the trial court's judgment required resentencing.  See *Hulett v. State*, 296 Ga. 49, 53 (766 SE2d 1) (2014).

1.  Viewed in the light most favorable to the jury's verdict, the evidence presented at Hernandez's trial showed that on May 1, 2012, Hernandez introduced himself to Jacqueline Ramon and B. M. at Confetti's nightclub in DeKalb County.  The three decided to go to another nightclub in the area.  Initially, they rode in two separate vehicles, with Ramon and B. M. following Hernandez.  On the way, however, Hernandez pulled over and told the women that he was feeling dizzy.  Ramon and B. M. agreed to let Hernandez ride with them, so they drove to Ramon's apartment complex, which was nearby and also in DeKalb County, and left Hernandez's vehicle there.  Hernandez got into the back seat of Ramon's vehicle; Ramon drove and B. M. sat in the front passenger seat.  Soon thereafter, Hernandez began firing gunshots out of the sunroof, demanding to drive, and putting his gun to Ramon's side.  Ramon pulled into the parking lot of a shopping center, also in DeKalb County, to accommodate Hernandez's demand.

Once parked, Ramon slipped her cell phone to B. M., who dialed 911 and kept the phone hidden.  Hernandez continued threatening Ramon and B.

On April 18, 2018, the trial court thus resentenced Hernandez on the aggravated assault count to 20 years to be served consecutively to his other sentences.  Hernandez filed a timely notice of appeal on April 25, 2018, and the case was docketed in this Court for the August 2018 term and submitted for a decision on the briefs.

M. with his gun and demanded that they remove their clothes. B. M. complied and moved to the back seat of the car, but Ramon refused, and moved from the driver's seat to the front passenger seat.

Hernandez then began driving on Buford Highway and got onto Interstate 85 (I-85) South. Hernandez threatened to kill Ramon unless B. M. climbed to the front of the car to engage in sexual acts with him as he drove. After Ramon, who was crying uncontrollably, objected to B. M. engaging in the sexual acts Hernandez demanded, Hernandez shot Ramon in the head. After the shooting, Hernandez drove back to Ramon's apartment complex to retrieve his car. He abandoned Ramon's vehicle there with her body inside; DeKalb County Police found Ramon's body there the next morning. Hernandez forced B.M. into his car and drove her to a nearby apartment complex where he raped her at gunpoint. Hernandez then picked up a male friend at another apartment complex and drove the friend and B. M. to Chicago, raping B. M. multiple times during the course of the trip. After B. M. surreptitiously texted a friend in Georgia, authorities were able to track B. M.'s phone and locate the hotel in Chicago where she was being held. They rescued B. M. and arrested Hernandez.

Although there was undisputed evidence establishing that the events leading up to Ramon's murder occurred in DeKalb County, B. M. was not certain what county she and Ramon were being driven in when Hernandez shot Ramon. After the incident, B. M. returned to the area with an investigator from the DeKalb County District Attorney's Office, who drove B. M. along the route she had been driven on the night of Ramon's murder. At one point, B. M. pointed the investigator in the direction of Interstate 75 (I-75) South where it splits from I-85 South and said that she thought she remembered passing Exit 227 near the time of the shooting. However, Exit 227 could only be accessed by cars traveling northbound on I-75, and when B. M. and the investigator drove to it, B. M. was unable to say if the shooting occurred there. She further stated that she "remembered some numbers 226 or 228, that's all I remembered." Then at trial, when asked where they were when Hernandez shot Ramon, B. M. testified that: "I only knew that we were in 85 South. I didn't know where we were at all."

Although Hernandez has not challenged the sufficiency of the evidence supporting his convictions, it is our customary practice to review the record for sufficiency of the evidence in murder cases. We have done so here and conclude that the evidence presented against Hernandez was sufficient to

authorize a rational jury to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hernandez contends as his sole enumeration of error that the State failed to establish that venue properly lay in DeKalb County. Generally speaking, criminal cases must be tried in the county in which the crime was committed. Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. "Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. . . ." OCGA § 17-2-2 (c). If, however, "it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred." Id. And if a "body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered." Id. See also *Coleman v. State*, 301 Ga. 753, 755 (804 SE2d 89) (2017); *Shelton v. Lee*, 299 Ga. 350, 354-355 (788 SE2d 369) (2016).

Venue is a jurisdictional fact that the State must prove beyond a reasonable doubt and can do so by direct or circumstantial evidence. *Jones v. State*, 301 Ga. 1, 4 (799 SE2d 196) (2017). Determining whether venue has

been established "'is an issue soundly within the province of the jury.'" *Crawford v. State*, 297 Ga. 680, 682 (777 SE2d 463) (2015) (citation omitted). When examining whether the State has carried its burden, we view the evidence in the light most favorable to the verdict and must sustain the verdict if the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted. And where, as here, it is not readily determinable in a murder case where the cause of death was inflicted or where the death occurred, then we must sustain the verdict if the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the body was found in the county where the defendant was indicted.[2] *Chapman v. State*, 275 Ga. 314, 317 (565 SE2d 442) (2002). Here, venue properly lay in DeKalb County, where Ramon's body was found, because it was not readily determinable where Hernandez shot and killed Ramon. See OCGA § 17-2-2 (c).

---

[2] "Because our law requires the State to prove beyond a reasonable doubt that venue is properly laid, the standard by which appellate courts are to assess the sufficiency of the evidence of venue is functionally equivalent to the standard by which they assess the sufficiency of the proof of guilt." *Martin v. McLaughlin*, 298 Ga. 44, 46 n.3 (779 SE2d 294) (2015).

Relying on B. M.'s statements to investigators — that she remembered seeing the number 227 around the time of the fatal gunshot, that she also recalled the numbers 226 or 228, and that she pointed the investigators to the I-75/I-85 South split — Hernandez argues that Ramon's death could have been inflicted only while the vehicle was on I-75 south of the split in the vicinity of Exit 227, which is near the Henry County–Clayton County line. And since no part of I-75 lies in DeKalb County, Hernandez argues, venue was proper only in Henry or Clayton County and was "affirmatively established not to lie in DeKalb County." Hernandez therefore contends that venue was improper in "the county in which the dead body was discovered" because that provision of OCGA § 17-2-2 (c) applies only if it "cannot be readily determined in what county the cause of death was inflicted," and here it could be determined under OCGA § 17-2-2 (e) that the cause of death was inflicted in either Henry or Clayton County. See OCGA § 17-2-2 (e) (allowing venue for crimes committed while in transit to lie in "any county in which the crime could have been committed through which the . . . vehicle . . . has traveled").

Hernandez's arguments, however, ignore that "'the determination of whether venue has been established is an issue soundly within the province of the jury.'" *Crawford*, 297 Ga. at 682 (citation omitted). At trial, the State

presented evidence that the county of Ramon's cause of death could not be readily determined because B. M. was not sure where Hernandez shot and killed Ramon — evidence that included B. M.'s trial testimony that she "only knew that we were in 85 South. I didn't know where we were at all." The State also introduced undisputed evidence that Ramon's body was discovered in DeKalb County by presenting several DeKalb County police officers and detectives as witnesses who testified specifically that Ramon's body was found at her apartment complex and that the entire complex was in DeKalb County. See *Crawford*, 297 Ga. at 682; *Shelton v. State*, 279 Ga. 161, 163 (611 SE2d 11) (2005).

Therefore, a rational jury — weighing the evidence and determining the credibility of witnesses — could have found, based on B. M.'s uncertainty as to location, that the county where the shooting occurred was not readily determinable. See *Cook v. State*, 273 Ga. 828, 830 (546 SE2d 487) (2001) ("All issues concerning the weight and credit to be given the evidence concerning these statements were for the jury, which was authorized to reject those portions of Cook's statements which indicated that the homicide occurred in Fulton County."). Because it was not readily determinable where Hernandez shot and killed Ramon, OCGA § 17-2-2 (c) applied, and the State

properly established venue in DeKalb County, where Ramon's body was found. We therefore affirm Hernandez's convictions and the trial court's denial of his motion for new trial.

Judgment affirmed. All the Justices concur.

Decided January 22, 2019.

Murder. DeKalb Superior Court. Before Judge Boulee.

Michael W. Tarleton, for appellant.

Sherry Boston, District Attorney, Gerald Mason, Anna G. Cross, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine DeRosa Emerson, Assistant Attorney General, for appellee.