296 Ga. 663
FINAL COPY

S14A1702. JONES v. THE STATE.

NAHMIAS, Justice.

Appellant Jarquez Jones was convicted of two counts of malice murder for the shooting deaths of Thaddeus Nelson and Randy Wilder; four counts of aggravated assault for shooting toward Amanda Hill, Alexis Jenkins, Audra McCluster, and Shametia McCluskey; and possession of a firearm during the commission of a felony. Appellant argues that the trial court erred in not charging the jury on voluntary manslaughter and that his sentence of two consecutive terms of life imprisonment plus 85 years constitutes cruel and unusual punishment. We affirm.[1]

---

[1] The crimes occurred on September 14, 2010. On December 17, 2010, a Fulton County grand jury indicted Appellant, Ladarrius Jones, and Samuel Jones for two counts of malice murder, two counts of felony murder, six counts of aggravated assault, 11 counts of participation in criminal street gang activity, and one count of possession of a firearm during the commission of a felony. Appellant and his co-indictees were tried from September 7 to September 23, 2011. The jury found Samuel Jones not guilty of all charges and Appellant and Ladarrius Jones guilty of all charges except the 11 gang activity counts. The felony murder counts were vacated as a matter of law, and the charges for aggravated assault of Nelson and Wilder merged into the two malice murder counts. The trial court sentenced Appellant and Ladarrius Jones to serve two consecutive terms of life imprisonment for the malice murder convictions, 20 consecutive years for each of the four remaining aggravated assault convictions, and five consecutive years for the firearm offense. On September 30, 2011, Appellant filed a motion for new trial, which he amended with new counsel on December 20, 2012. After a hearing, the trial court denied the motion on April 28, 2014. Appellant filed a timely notice of appeal, and the case was docketed to this Court for the September 2014 term and submitted for decision on the briefs. The record does not indicate whether Ladarrius Jones has appealed.

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. Appellant, his brother Samuel Jones, and his cousin Ladarrius Jones were part of the "Bluff Gang," a rap group in the Atlanta neighborhood known as the Bluff. On September 13, 2010, Appellant and Samuel's mother posted insulting remarks on Samuel's girlfriend's Facebook page. Samuel's girlfriend and the four aggravated assault victims were members of the "Young Crew," or "YC," another rap group in the Bluff. After several more insults were exchanged via Facebook, members of the Bluff Gang and YC took the online dispute to the streets. That night, Appellant and some YC members including Alexis Jenkins had a confrontation, during which insults were exchanged and YC members may have threatened Appellant with a gun and a taser. In response, Appellant drew a gun and then shot at the YC members as they ran away.

Around 3:00 p.m. the next day, September 14, Appellant and YC members had another confrontation, during which Appellant put a gun to Jenkins's head and then fired a shot into the air. Jenkins threatened to get her cousins to fight Appellant, but she did not display a weapon.

Around 10:00 p.m. that night, Appellant again confronted YC members

2

on the street. A witness who saw the encounter testified that Appellant looked like he was going to fight the YC members, and they appeared to exchange angry words. As the witness turned away, the YC members ran past her, and she heard gunshots. Several other witnesses, most of whom were YC members, testified to seeing Appellant shoot at the fleeing group of YC members, which included Jenkins, Hill, McCluster, and McCluskey.[2] The testimony varied as to who was with Appellant (most witnesses said he was with two or three other men), whether his associates had guns, and how many shots were fired. Wilder and Nelson, who were not involved in the dispute between the Bluff Gang and YC, were standing in the area when the shooting began and were the only people hit by the gunfire; they both died from their gunshot wounds. When the first police officer arrived on the scene, Jenkins, who also testified at trial, told him that Appellant and others had been shooting at them. Appellant and his co-indictees were not located that night, but they were arrested six days later after

---

[2] Although the indictment lists the name of one of the aggravated assault victims as Shametia McCluster, at trial she was identified without dispute as Shametia McCluskey. Appellant does not argue that this variance undermines his conviction for that count of aggravated assault, and this Court has held that a challenge to the sufficiency of the evidence based on an incorrectly named victim will fail when "it is clear that the two names referred to the same individual," Bostic v. State, 294 Ga. 845, 847 (757 SE2d 59) (2014), as is the case here.

being pulled over for speeding. No witnesses saw any YC members with guns on September 14, and shell casings were recovered only from the area where Appellant had been seen.

At trial, Appellant's defense theory was that he did not participate in the shootings. Appellant did not testify, but he offered two alibi witnesses who claimed that he was in a different area of the Bluff and took cover inside a building with them when the shooting began.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant argues that the trial court erred in denying his request for

an instruction on voluntary manslaughter as a lesser included offense of murder. In fact, that instruction was requested only by one of Appellant's co-defendants, and when the court denied it, Appellant did not object, likely because any contention that he committed voluntary manslaughter would have been entirely inconsistent with his alibi defense. Accordingly, the trial court's failure to give a voluntary manslaughter instruction is reviewable on appeal only for plain error. See OCGA § 17-8-58 (b) (providing that the failure to object regarding a jury instruction at trial precludes appellate review unless "the jury charge constitutes plain error which affects substantial rights of the parties"); State v. Kelly, 290 Ga. 29, 32 (718 SE2d 232) (2011) ("[A]ppellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions.").

> The "plain error" test adopted by this Court in State v. Kelly . . . authorizes reversal of a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

Lake v. State, 293 Ga. 56, 59 (743 SE2d 414) (2013) (citations and punctuation omitted). We see no plain error here.

5

A voluntary manslaughter charge is required only if there is "'slight evidence showing that the victim seriously provoked the defendant, causing the defendant to kill the victim "solely as the result of a sudden, violent, and irresistible passion," OCGA § 16-5-2 (a).'" Merritt v. State, 292 Ga. 327, 331 (737 SE2d 673) (2013) (citation omitted). Appellant argues that evidence of witnesses to the deadly encounter hearing numerous gunshots raised the possibility of mutual gunfire. But there was no evidence that the YC members had guns or shot at Appellant, and the only shell casings at the scene were found where Appellant was seen firing his gun.

Some evidence did suggest that YC members may have threatened Appellant with a gun and a taser during their first encounter on the night before the killings. It was not plain error, however, for the trial court to determine, as a matter of law, that the one-day interval between that possible provocation and the killings was "sufficient for the voice of reason and humanity to be heard" by Appellant, so that "the killing[s] shall be attributed to deliberate revenge and be punished as murder." OCGA § 16-5-2 (a). See, e.g., Merritt, 292 Ga. at 331 (holding that no voluntary manslaughter instruction was required where "a few hours passed between the [allegedly provoking] argument and the killing");

6

Howard v. State, 288 Ga. 741, 746 (707 SE2d 80) (2011) (same, where "the shooting occurred three to four hours after the initial confrontation," so that "objectively, [Appellant's] response to the provoking incident was unreasonable" (citation omitted)).

Appellant also points to evidence suggesting that he was arguing with the YC members immediately before the shootings, but there is no evidence as to what words were exchanged and in any event, "[a]s a matter of law, angry statements alone ordinarily do not amount to 'serious provocation' within the meaning of OCGA § 16-5-2 (a)." Merritt, 292 Ga. at 331. Moreover, "[t]his Court has repeatedly held that neither fear that someone is going to pull a gun nor fighting prior to a homicide are types of provocation demanding a voluntary manslaughter charge." Funes v. State, 289 Ga. 793, 795 (716 SE2d 183) (2011). For these reasons, the trial court's failure to charge on voluntary manslaughter was not plain error. See Merritt, 292 Ga. at 331.

3. Appellant, who was 17 years old at the time of his crimes, also asserts that his sentence — two consecutive terms of life imprisonment plus 85 years — constitutes cruel and unusual punishment in violation of the Eighth

Amendment to the United States Constitution.[3]  Appellant did not raise this constitutional claim at or before his sentencing or in his motion for new trial, however, and he therefore has waived appellate review of the issue.  See Brinkley v. State, 291 Ga. 195, 196 (728 SE2d 598) (2012).

In any event, Appellant's Eighth Amendment claim is meritless.  Georgia law provides that "[a] person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."  OCGA § 16-5-1 (e) (1).  The Supreme Court of the United States has in recent years limited the sentences that may be imposed on defendants who murder before they turn 18, holding first that the Eighth Amendment forbids imposing a death sentence on such juveniles, see Roper v. Simmons, 543 U. S. 551 (125 SCt 1183, 161 LE2d 1) (2005), and then that the Constitution forbids imposing even a mandatory sentence of life without parole, see Miller v. Alabama, 567 U. S. ___, 132 SCt 2455, 183 LE2d 407 (2012).  Since Miller, this Court has held that sentencing a juvenile to life in prison without the possibility of parole pursuant to OCGA § 16-5-1 (e) (1) does not violate the

---

[3] Appellant raises no distinct claim under the parallel provision of the Georgia Constitution. See Ga. Const. of 1983, Art. I, Sec. I, Par. XVII.

8

federal or state constitution because such a sentence is not mandatory but rather is imposed in the discretion of the sentencing court after consideration of all the circumstances in the given case, including the age of the offender and the qualities that accompany youth. See Bun v. State, 296 Ga. 549 (769 SE2d 381) (2015); Foster v. State, 294 Ga. 383, 387 (754 SE2d 33) (2014).

In sentencing Appellant, the trial court followed the guidance offered in Miller and explicitly considered Appellant's relatively young age. See Miller, 132 SCt at 2469 (requiring courts to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison"). The court explained that it based its sentence on balancing Appellant's youth against the "vicious, mean, violent behavior and the adult conduct that was engaged in," which included the murder of not one but two innocent bystanders. Appellant's sentence was constitutional.

Judgment affirmed. All the Justices concur.


Decided March 2, 2015.

Murder. Fulton Superior Court. Before Judge Schwall.

C.F. Brock & Associates, Chaunda Brock, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lenny I. Krick, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.