301 Ga. 1
FINAL COPY

S17A0348.  JONES v. THE STATE.

PETERSON, Justice.

Appellant Ladarrius Jones was convicted of two counts of malice murder

for the shooting deaths of Thaddeus Nelson and Randy Wilder; four counts of

aggravated assault for shooting in the direction of Amanda Hill, Alexis Jenkins,

Audra McCluster, and Shametia McCluskey; and possession of a firearm

during the commission of a felony.[1] Appellant argues that the evidence was

---

[1] The crimes occurred on September 14, 2010.  On December 17, 2010, a Fulton County grand jury indicted Appellant, Jarquez Jones, and Samuel Jones for two counts of malice murder, two counts of felony murder, six counts of aggravated assault, 11 counts of participation in criminal street gang activity, and one count of possession of a firearm during the commission of a felony.  Appellant and his co-indictees were tried from September 7 to September 23, 2011.  The jury found Samuel Jones not guilty of all charges and Appellant and Jarquez Jones guilty of all charges except the 11 gang activity counts.  The felony murder counts were vacated as a matter of law, and the charges for aggravated assault of Nelson and Wilder merged into the two malice murder counts.  The trial court sentenced Appellant and Jarquez Jones to each serve two consecutive terms of life imprisonment for the malice murder convictions, 20 consecutive years for each of the four remaining aggravated assault convictions, and five consecutive years for the firearm offense.  On September 27, 2011, Appellant filed a motion for new trial, which he amended with new counsel on April 21, 2016.  After a hearing, the trial court denied the motion on May 11, 2016.  Appellant filed a timely notice of appeal, and the case was docketed to this Court for the term beginning in December 2016 and submitted for decision on the briefs. Jarquez Jones's convictions and sentences were affirmed by this Court in March 2015. See Jones v. State, 296 Ga. 663 (769 SE2d 901) (2015), overruled in part by Veal v. State,  298 Ga. 691, 697-703 (5) (b)-(d) (784 SE2d 403)

insufficient to prove venue, the trial court erred in failing to give a jury charge on voluntary manslaughter, and his aggravated assault convictions should have merged with his malice murder convictions. We affirm because the State established venue beyond a reasonable doubt, the voluntary manslaughter charge was not warranted under the evidence presented, and the aggravated assault offenses did not merge with the malice murder convictions because the crimes involved different victims.

Viewed in the light most favorable to the verdicts, the trial evidence, as summarized in our opinion disposing of co-defendant Jarquez Jones's appeal and as adopted by Appellant, showed the following.

[Jarquez Jones], his brother Samuel Jones, and his cousin Ladarrius Jones [Appellant] were part of the "Bluff Gang," a rap group in the Atlanta neighborhood known as the Bluff. On September 13, 2010, [Jarquez] and Samuel's mother posted insulting remarks on Samuel's girlfriend's Facebook page. Samuel's girlfriend and the four aggravated assault victims were members of the "Young Crew," or "YC," another rap group in the Bluff. After several more insults were exchanged via Facebook, members of the Bluff Gang and YC took the online dispute to the streets. That night, [Jarquez] and some YC members including Alexis Jenkins had a confrontation, during which insults were exchanged and YC members may have threatened [Jarquez] with

(2016).

2

a gun and a taser. In response, [Jarquez] drew a gun and then shot at the YC members as they ran away.

Around 3:00 p.m. the next day, September 14, [Jarquez] and YC members had another confrontation, during which [Jarquez] put a gun to Jenkins's head and then fired a shot into the air. Jenkins threatened to get her cousins to fight [Jarquez], but she did not display a weapon.

Around 10:00 p.m. that night, [Jarquez] again confronted YC members on the street. A witness who saw the encounter testified that [Jarquez] looked like he was going to fight the YC members, and they appeared to exchange angry words. As the witness turned away, the YC members ran past her, and she heard gunshots. Several other witnesses, most of whom were YC members, testified to seeing [Jarquez] shoot at the fleeing group of YC members, which included Jenkins, Hill, McCluster, and McCluskey.[2] . . . Wilder and Nelson, who were not involved in the dispute between the Bluff Gang and YC, were standing in the area when the shooting began and were the only people hit by the gunfire; they both died from their gunshot wounds. When the first police officer arrived on the scene, Jenkins, who also testified at trial, told him that [Jarquez] and others had been shooting at them. [Jarquez] and his co-indictees[, including Appellant,] were not located that night, but they were arrested six days later after being pulled over for speeding. No witnesses saw any YC members with guns on September 14, and shell casings were recovered only from the area where [Jarquez] had been seen.

---

[2]    Although the indictment lists the name of one of the aggravated assault victims as Shametia McCluster, at trial she was identified without dispute as Shametia McCluskey. Appellant does not argue that this variance undermines his conviction for that count of aggravated assault, and this Court has held that a challenge to the sufficiency of the evidence based on an incorrectly named victim will fail when it is clear that the two names referred to the same individual, as is the case here.

Jones, 296 Ga. at 664 (1) n.2 (citation and punctuation omitted).

Jones, 296 Ga. at 663-664 (1).

Witnesses testified at trial that Appellant was with Jarquez during the 3:00 p.m. incident on September 14 and that he and Jarquez shot at several YC members at about 10:00 p.m. Appellant called Antonio Daniel, who testified that at about 8:00 p.m. on September 14, one of the YC members threatened him with a gun, and he began to walk away and then started to run when he heard a gunshot. Daniel stated that he ran to a club called "Man Spot" or "Spot," where he encountered Appellant, Jarquez, and Johnny Jordan, the owner of the club. According to Daniel, he talked to Appellant, Jarquez, and Jordan for a few minutes before they heard gunshots, at which time they went inside the club, locked the doors, and did not exit until they heard police sirens. Jordan testified that he heard more gunshots while the group was inside the club and they did not exit the club until they heard police sirens and thought it was safe. Jordan and Daniel both stated that Appellant was not outside at the time of the second round of gunfire and did not have a gun. Jordan stated that the "word on the street was that Bluff Gang boys were firing at [YC] girls" and there was some crossfire.

4

1. Appellant argues that the State failed to establish venue, because there was no evidence that the murder victims' "cause of death was inflicted" in Fulton County as required by OCGA § 17-2-2 (c). Appellant argues that although Wilder and Nelson were found in Fulton County, the recovered shell casings showed that the gunshots that killed them were fired between 30 to 291 feet away from where they were found, and no evidence was presented that the shots were fired in Fulton County. We disagree that venue was not established beyond a reasonable doubt.[3]

A criminal case must be tried "in the county where the crime was committed." Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. Venue is a jurisdictional fact that the State must prove beyond a reasonable doubt in every criminal trial, and the State may use both direct and circumstantial evidence to meet its burden. See Crawford v. State, 297 Ga. 680, 682 (3) (777 SE2d 463) (2015). Although the burden of proving venue rests with the State, "the

---

[3] Although Appellant does not otherwise challenge the legal sufficiency of the evidence, we have independently reviewed the record and conclude that the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

determination of whether venue has been established is an issue soundly within the province of the jury." Id.

Murder generally is "considered as having been committed in the county in which the cause of death was inflicted." OCGA § 17-2-2 (c). "If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred." Id.

Here, medical examiners employed by Fulton County testified that Wilder's cause of death was massive internal bleeding as a result of a gunshot wound to his abdomen, and Nelson's cause of death was a gunshot wound to the head. Appellant acknowledges that the evidence shows that the victims both suffered these wounds and died at 540 Paines Avenue, an address located in Fulton County.

Appellant reads the language of OCGA § 17-2-2 (c) regarding where the "cause of death was inflicted" as requiring the State to prove that guns were fired in Fulton County and argues that there is no evidence to establish this point. But that is not what this language means. Although the evidence shows that Appellant and Jarquez fired guns 30 to 291 feet away from where Wilder

and Nelson were found, Wilder and Nelson did not die simply because shots were fired. The victims died because bullets struck their bodies and "inflicted" fatal injuries.

The authorities cited by Appellant do not support a different reading of the phrase "cause of death was inflicted." Rather, the cases merely emphasize the point that venue has to be established beyond a reasonable doubt by record evidence. See Twitty v. State, 298 Ga. 204, 206-208 (2) (779 SE2d 298) (2015) (reversing defendant's murder conviction because the "cause of death" was "inflicted on a boat ramp" and there was no evidence showing that the boat ramp was located in the county where the defendant was tried); Jones v. State, 272 Ga. 900, 903-904 (3) (537 SE2d 80) (2000) (evidence that murder location was on a certain street and was across from a home located in Fulton County was insufficient to establish venue); King v. State, 271 Ga. App. 384, 387 (1) (609 SE2d 725) (2005) ("Establishing the venue of a nearby site does not establish the venue of the crime site itself.") (quoting Chapman v. State, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002)) (punctuation omitted). The evidence

showed that the victims' causes of death were inflicted in Fulton County, so venue was established beyond a reasonable doubt.[4]

2. Appellant next argues that the trial court erred in refusing to give the requested charge on voluntary manslaughter as a lesser included offense of murder. Appellant concedes that he did not specifically request the charge or object either during the charge conference or after the charges were given, as one of his co-defendants (Samuel Jones) did. Appellant argues that he nevertheless preserved the issue because he previously had stated an intent to join the objections of his co-defendants and the trial court had confirmed that objections by one defendant were automatically joined by the others. The record shows, however, that Appellant expressly adopted his co-defendants' objections only as to the jury composition. And although the court said that one defendant's objections would be joined by the other co-defendants, after it charged the jury, it noted Samuel Jones's exception to the requested voluntary

---

[4] Because of this conclusion, we need not consider whether the jury could have inferred venue from the evidence that the fatal shots were fired less than 300 feet from a location admittedly within Fulton County, nor does this case implicate Jones, 272 Ga. 900. Cf. Propst v. State, 299 Ga. 557, 568 (788 SE2d 484) (2016) (Nahmias, J., concurring) (arguing that Jones should be disapproved to the extent it precludes jurors from making a common-sense and mathematically supportable inference that a shooting occurred in county where case was tried where evidence showed that shooting occurred "just down the street" from a residence located in that county and no evidence showed that the location was near a county line).

manslaughter charge and asked whether there were "any other exceptions by anybody?" Appellant, through counsel, responded, "From what I can see, Your Honor, no objections." Based on Appellant's response, he failed to make an objection to the court's failure to give the voluntary manslaughter charge. As a result, we review his claim for plain error. See Shaw v. State, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013).

"[A] failure to charge amounts to plain error only to the extent that the failure to charge was erroneous, the error was obvious, the failure to charge likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and punctuation omitted). A voluntary manslaughter charge is required when there is slight evidence that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a);

see also <u>Merritt v. State</u>, 292 Ga. 327, 331 (2) (737 SE2d 673) (2013).[5] We see no plain error here.

Appellant argues that the testimony of defense witnesses Daniel and Jordan that a YC member had shot at Daniel — and that Appellant was aware of it — along with the ongoing dispute between Bluff and YC Gang members was sufficient evidence of provocation to warrant the voluntary manslaughter charge. Appellant also relies on Jordan's testimony that the "word on the street was that Bluff Gang boys were firing at [YC] girls" and there was some crossfire. But the entirety of Daniel's and Jordan's testimony shows that such a charge was not authorized, because Daniel and Jordan both testified that they and Appellant hid inside the Man Spot the entire time the fatal gunshots were fired and exited the building only when they heard sirens. Daniel and Jordan also stated that Appellant did not have a gun. This evidence shows that Appellant's response to the purported shooting by YC members was to take

---

[5] In previous cases, we have questioned whether the provocation necessary to authorize a charge may come from a person different from the homicide victim where the defendant fired at the provoker but hit a third party. See <u>Foster v. State</u>, 264 Ga. 369, 369 (1) n.2 (444 SE2d 296) (1994); see also <u>Howard v. State</u>, 288 Ga. 741, 745 (4) (707 SE2d 80) (2011); <u>Foster v. State</u>, 288 Ga. 98, 105-106 (4) (701 SE2d 189) (2010); compare Shaw v. State, 301 Ga. 14 ( __ SE2d __ ) (2017). Given our disposition of Appellant's argument, we need not resolve that question here.

cover, not to return fire as the result of serious provocation. See Armstrong v. State, 264 Ga. 505, 506 (3) (448 SE2d 361) (1994) (voluntary manslaughter charge not warranted where absence of evidence of serious provocation and defendant's evidence was that he was elsewhere when crime was committed); Dickey v. State, 240 Ga. 634, 642 (6) (242 SE2d 55) (1978) (trial court did not err in refusing to give voluntary manslaughter charge where defendant's sole defense was that of alibi and evidence did not support the charge), overruled on other grounds by Duckworth v. State, 268 Ga. 566, 568-569 (1) (492 SE2d 201) (1997).

To the extent Appellant relies on the State's evidence that YC members appeared to exchange angry words with Jarquez and Appellant prior to the shooting, "[a]s a matter of law, angry statements alone ordinarily do not amount to 'serious provocation' within the meaning of OCGA § 16-5-2 (a)." Merritt, 292 Ga. at 331 (2). This Court previously has held that "neither fear that someone is going to pull a gun nor fighting" is sufficient alone to require a charge on voluntary manslaughter. See Smith v. State, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015). The failure to charge voluntary manslaughter was thus

not error, much less plain error. See Jones, 296 Ga. at 666 (2) (considering evidence and ruling on appeal of Appellant's co-defendant that trial court's failure to charge on voluntary manslaughter was not plain error).

3. Appellant also argues that the trial court should have merged his convictions for the aggravated assault of Hill, Jenkins, McCluster, and McCluskey into the malice murder convictions, because the intent element of the aggravated assault charges was transferred to support the malice murder counts. Appellant argues that because of this transferred intent, each aggravated assault count was a lesser included offense of, and merged with, the malice murder convictions in the same fashion that predicate offenses merge with felony murder convictions. Appellant's claim fails. Just as a predicate felony does not merge with a felony murder conviction when the two crimes involve different victims, see Henderson v. State, 285 Ga. 240, 244 (3) (675 SE2d 28) (2009), the merger doctrine does not apply where, as here, the crimes were committed against different people. See Jones v. State, 290 Ga. 670, 672 (2) (725 SE2d 236) (2012) ("It is evident from the wording of OCGA § 16-1-6 (1) that the legislature did not intend one crime to be included within another

if each crime affected a different person.") (citation and punctuation omitted); see also <u>Biddy v. State</u>, 253 Ga. 289, 292 (2) (319 SE2d 842) (1984) (murder and aggravated assault upon different victims did not merge).

Judgment affirmed. All the Justices concur.

Decided April 17, 2017.

Murder. Fulton Superior Court. Before Judge Schwall.

Kevin A. Anderson, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Kevin C. Armstrong, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.