**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 23, 2022

S22A0744, S22A0745.  JONES v. THE STATE.

BETHEL, Justice.

A Coffee County jury found Samuel Edward Jones guilty of malice murder and other crimes in connection with the shooting death of Terrance Gibson. In these consolidated cases, Jones appeals, arguing that the trial court erred by refusing to charge the jury on voluntary manslaughter and that his trial counsel provided constitutionally ineffective assistance.[1] We disagree with both

---

[1] Gibson's death occurred on November 18, 2018. On January 30, 2019, Jones was indicted by a Coffee County grand jury for malice murder, two counts of influencing a witness, and possession of a firearm by a convicted felon. On November 4, 2020, the trial court entered a judgment of nolle prosequi on the firearm-possession charge. On November 18, 2020, Jones was indicted by a Coffee County grand jury for an additional count of possession of a firearm by a convicted felon during the commission of a crime.

The court held a bifurcated trial in May 2021. At the trial on the three remaining counts of the 2019 indictment, the trial court granted Jones's motion for a directed verdict on the second count of influencing a witness, and the jury found Jones guilty of malice murder and the first count of influencing a

contentions and affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. In October 2018, Jones was in a relationship with Danielle Wilson. Danielle lived with her mother, Adrece Wilson, at Adrece's house. Adrece's other daughter, Desiree, and Adrece's boyfriend, Demichael Green, also lived in the house.

In mid-October, Gibson had a conflict with Adrece in the front yard of her house during which the two argued and Gibson discharged a firearm several times. After the conflict, Adrece went back inside the house, and Jones and Green came outside. Jones and Green accosted Gibson, and both fired shots at Gibson as Gibson

witness. At the trial on the sole count of the 2020 indictment, the same jury found Jones guilty of possession of a firearm by convicted felon during the commission of a crime. The trial court then sentenced Jones to life in prison without the possibility of parole for malice murder, five years concurrent for influencing a witness, and 15 years consecutive for the firearm-possession count. On May 14, 2021, Jones filed motions for new trial in both cases, which he later amended through new counsel. Following a hearing on February 11, 2022, the trial court denied the motions, as amended. On February 14, 2022, Jones filed notices of appeal in these cases. These cases were docketed to this Court's April 2022 term, submitted for decisions on the briefs, and consolidated for opinion.

2

walked away.

Approximately one month after this confrontation, on November 18, Jones was riding in a car with Desiree with Adrece driving. As they were about to return Jones to his residence, they noticed Gibson walking down a nearby street. Adrece testified that Jones got out of the car and "had some kind of words" with Gibson. Though she could not hear what the two said, she did hear Gibson say, "No, no, no," before attempting to run away from Jones. Jones then shot at Gibson. Gibson fell but then got back up and continued running. Gibson was shot once in the back and died from his injury.

A witness observed Jones running from the general area where he heard gunshots fired and then saw Jones run to a house. The witness directed police officers to the house, where they spoke with Jones after the incident. Jones told one of the officers that he had gone to a store, come back to this house, and was about to take out the trash when he heard gunshots.

The police arrested Jones on December 7, 2018. Following his arrest, Jones spoke with Desiree by phone from jail and told her that

he was going to send her a letter containing a story she needed to memorize. The letter, which was admitted into evidence at trial, instructed Desiree that her story was that she did not see any shooting on November 18 and that she later learned of the shooting on social media. The letter also instructed her to say that Green was in the car with them and that Green got out of the car while Jones remained in the vehicle.

At trial, the State introduced a second letter addressed to Desiree that had been found in Jones's jail cell during a search. In that letter, Jones told Desiree that "all you saying is, we left the store to drop [Jones] off home." Desiree was to say that when they got close to his house, Jones told Adrece to stop the car, and he got out of the vehicle and ran "back up the street." When Adrece turned the car around to follow Jones, Desiree saw a truck "coming down fast" and saw a black handgun fired out of the truck's passenger-seat window, at which time Desiree put her head down. In the letter, Jones further instructed Desiree to say that she never got out of the car and never saw the person's face who was shooting but saw a

4

"black hand" come out of the window. She was also to say that she heard lots of shots fired, that she "never saw the victim," that she "did see another person walking during the time of the shooting" but could not make out who he was because his back was turned, that she did not know where Jones "went or was doing at the time the shots went off," and that she should answer that she "d[id] not remember" or "d[id] not know" to any questions she got "trapped on." Finally, the letter told Desiree to say that Green had previously shot at "GB."

While he was in jail, Jones also spoke with Adrece's sister, Sharon, over the phone. Jones offered to give her money he expected to receive from a lawsuit in exchange for Sharon persuading Adrece to change her statement that she saw Jones shoot Gibson.

Antonio Stewart, another inmate, testified that, while Jones was awaiting trial, Jones told him that while riding with Adrece and his girlfriend's sister, he saw Gibson walking, got out of his car, and shot at him. Jones also told Stewart that he then ran back to his house, entered through a window, and hid the firearm, which he

5

later buried. After Stewart talked to the police, Jones instructed another person, Shelby Henderson, to create an email address and send a threatening email to Stewart prior to the trial.

2. Jones first argues that the trial court committed plain error by declining to instruct the jury on his requested pattern charge for the lesser offense of voluntary manslaughter.[2] The trial court declined to give the charge, stating, "I don't think the facts fit." Later, after the giving of the final charge to the jury, Jones did not object to the trial court's decision not to give an instruction on voluntary manslaughter. See OCGA § 17-8-58 (a) ("Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the

---

[2] The pattern jury instruction for voluntary manslaughter provides as follows:

> For voluntary manslaughter, the State must prove that the Defendant (1) caused the death of another person (2) under circumstances that would otherwise be murder (3) and acted only because of a sudden, violent, and irresistible passion that resulted from serious provocation (4) which was sufficient to excite such passion in a reasonable person. If you decide that enough time passed between the provocation and the killing for a reasonable person to have "cooled off" and regained judgment, then the killing is not voluntary manslaughter.

Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 2.10.41.

grounds for such objection before the jury retires to deliberate. Such

objections shall be done outside of the jury's hearing and presence."").

We therefore review Jones's claim of error regarding the failure to

give a voluntary manslaughter charge for plain error only. See

OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection

(a) of this Code section shall preclude appellate review of such

portion of the jury charge, unless such portion of the jury charge

constitutes plain error which affects substantial rights of the

parties. Such plain error may be considered on appeal even if it was

not brought to the court's attention as provided in subsection (a) of

this Code section.").

> A failure to charge amounts to plain error only to the
> extent that the failure was erroneous, the error was
> obvious, the failure to charge likely affected the outcome
> of the proceedings, and the error seriously affected the
> fairness, integrity, or public reputation of judicial
> proceedings.

(Citation and punctuation omitted.) *Burke v. State*, 302 Ga. 786, 789

(2) (809 SE2d 765) (2018). "We need not analyze all of the elements

of this test when, as in this case, the defendant has failed to

establish one of them." (Citation omitted.) *Early v. State*, 313 Ga. 667, 672 (2) (b) (872 SE2d 705) (2022).

"A voluntary manslaughter charge is required when there is slight evidence that the defendant acted 'solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.'" *Jones v. State*, 301 Ga. 1, 5-6 (2) (799 SE2d 196) (2017) (quoting OCGA § 16-5-2 (a)), overruled on other grounds by *Worthen v. State*, 304 Ga. 862 (823 SE2d 291) (2019).

In reviewing this issue in conjunction with Jones's motion for new trial, the trial court adhered to its decision to forgo a charge on voluntary manslaughter, reasoning that the charge was not required because there was no evidence supporting it. Considering the evidence presented at trial, we agree with the trial court's conclusion.

Jones points to evidence that he and Gibson were "members of rival gangs" and had been in a "shootout" only a month before Gibson's death. Jones also relies on Adrece's testimony that

just before Gibson was shot by Jones, Jones and Gibson had a "violent exchange" immediately prior to the shooting. Even assuming, arguendo, that Jones's assertions were correct, the trial court was authorized to find as a matter of law that the month-long interval between the shootout between Jones and Gibson and the murder was a sufficient cooling-off period such that the earlier confrontation "did not constitute even slight evidence of provocation." *Harris v. State*, 280 Ga. 372, 373 (2) (627 SE2d 562) (2006) (where the purported provocation was a month-old beating by the victim, the trial court could conclude, as a matter of law, that the incident did not constitute even slight evidence of provocation necessitating a voluntary manslaughter charge due to the cooling off period). See also *Hatchett v. State*, 259 Ga. 857, 858 (1) (388 SE2d 694) (1990) (three-week interval between defendant's discovery of a love letter to the victim and the alleged shooting sufficient to authorize the trial court to conclude, as a matter of law, that the discovery did not constitute provocation warranting a voluntary manslaughter charge because of the "lengthy cooling off period").

9

Moreover, as for evidence of the "violent exchange" between Jones and Gibson before the shooting, Adrece's testimony was that after Jones left the vehicle and confronted Gibson, the two "had some kind of words" and that Gibson said "No, no, no," before attempting to run away from Jones, who shot at him. This Court has previously stated that "[a]s a matter of law, angry statements alone ordinarily do not amount to 'serious provocation' within the meaning of OCGA § 16-5-2 (a)." *Merritt v. State*, 292 Ga. 327, 331 (2) (737 SE2d 73) (2013). See also *Orr v. State*, 312 Ga. 317, 321 (2) (862 SE2d 513) (2021) (same); *Jones*, 301 Ga. at 6-7 (2) (evidence that appellant appeared to exchange angry words with rival gang members prior to shooting did not support voluntary manslaughter instruction). Thus, we cannot say that the trial court clearly or obviously erred in concluding that there was no evidence of serious provocation, and therefore we conclude that the trial court did not plainly err in declining to give a charge on voluntary manslaughter.

3. Jones next argues that his conviction for malice murder should be reversed because he received ineffective assistance at trial

due to his counsel's failure to object to the trial court's refusal to charge the jury on voluntary manslaughter. Because Jones cannot establish that his counsel was constitutionally deficient, his claim fails.

> In order to succeed on his claim of ineffective assistance, [Jones] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his or her burden of proving either prong of the *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984) test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citation and punctuation omitted.) *Lyons v. State*, 309 Ga. 15, 25 (8) (843 SE2d 825) (2020).

As we explained above in Division 2, even if Jones's trial counsel had preserved an objection to the trial court's failure to give an instruction on voluntary manslaughter by objecting as set forth in OCGA § 17-8-58 (a), such an objection would have been meritless, as there was no basis for the trial court to instruct the jury on

11

voluntary manslaughter. Trial counsel's performance is not deficient where he fails to make a meritless objection. See *Lyons*, 309 Ga. at 27 (8) (b) ("Failure to lodge meritless objections does not support an ineffective assistance claim."). This claim of ineffective assistance of counsel therefore fails.

*Judgments affirmed. All the Justices concur.*