306 Ga. 50
FINAL COPY

S19A0185.  THE STATE v. WILLIAMS.

BLACKWELL, Justice.

In February 2018, a Fulton County grand jury indicted Graham Williams, charging him with distributing heroin in violation of the Georgia Controlled Substances Act[1] and felony murder predicated upon the unlawful distribution of heroin,[2] both charges arising from the fatal overdose of Leslie Gregg Ivey. Six months later, the trial court dismissed the indictment, concluding that evidence presented at a pretrial hearing did not show that Williams was, in fact, guilty of distributing heroin. The State appeals, and for the reasons that follow, we reverse.

1. Soon after he was indicted, Williams filed a number of

---

[1] See OCGA § 16-13-30 (b) ("[I]t is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance.").

[2] See OCGA § 16-5-1 (c) ("A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice.").

pleadings and motions, including a general demurrer, a plea in bar, and a motion to dismiss the felony murder charge upon constitutional grounds. In his general demurrer, Williams broadly asserted that the indictment failed "adequately to charge [Williams] with any offense" and failed to "sufficiently set out the charge or any violation of the law." In his plea in bar, he argued that his prosecution was barred by the Georgia Medical Amnesty Act, OCGA § 16-13-5.[3] And in his motion to dismiss the felony murder charge, Williams argued that the felony murder statute is unconstitutionally vague.

In July 2018, the trial court held a hearing at which Williams and the State presented evidence concerning the plea in bar.[4] The

---

[3] The Medical Amnesty Act provides, in pertinent part: "Any person who in good faith seeks medical assistance for a person experiencing or believed to be experiencing a drug overdose shall not be arrested, charged, or prosecuted for a drug violation if the evidence for the arrest, charge, or prosecution of such drug violation resulted solely from seeking such medical assistance." OCGA § 16-13-5 (b). The statute defines "drug violation" as the possession of marijuana or a controlled substance in violation of OCGA § 16-13-30 or the possession or use of drug paraphernalia in violation of OCGA § 16-13-32.2.

[4] At the hearing, Williams's counsel briefly mentioned the motion to dismiss the felony murder charge on constitutional grounds, saying that it was

evidence shows that, on the evening of October 21, 2015, Williams, Ivey, and two other individuals met at a house in Alpharetta. Ivey wanted to use heroin that he already had obtained. With Ivey's consent, Williams used a syringe to inject Ivey with the heroin. Ivey soon became unconscious and later died as the result of a heroin overdose. The source of the heroin was not established definitively at the hearing, but Williams presented evidence that he had played no part in its acquisition. Williams also presented evidence, including his own testimony, that he in good faith sought medical assistance for Ivey when Ivey became unconscious. The State presented a witness who testified that Williams did not seek medical assistance for Ivey and, to the contrary, attempted to obstruct medical assistance by impeding the efforts of others to call 911.

Williams and the State argued their respective positions at the hearing and in post-hearing briefs. The prosecuting attorney

---

a "secondary issue." Counsel made no arguments in support of that motion, however, in the hearing or the post-hearing briefs. The general demurrer never came up at all in the hearing or the post-hearing briefs.

asserted that the Medical Amnesty Act was inapplicable for two reasons. First, he argued, the Act only bars the prosecution of possession offenses, and Williams was charged with distributing heroin, not merely possessing it. Second, the prosecuting attorney said, the evidence shows that Williams did not seek medical assistance for Ivey in good faith. In response, Williams noted that the evidence presented at the hearing shows only that he used a syringe to inject Ivey with Ivey's own heroin and at Ivey's request. Such conduct, he argued, simply does not amount to the "distribution" of heroin under OCGA § 16-13-30 (b).[5] Williams also pointed to the absence of circumstances commonly indicative of distribution, such as the presence of packaging materials, scales, and significant amounts of currency. Moreover, Williams asserted, he had shown by a preponderance of the evidence that he sought medical assistance for Ivey in good faith and thus qualified for immunity under the Medical Amnesty Act.

---

[5] Williams did not unconditionally admit that he had injected Ivey with heroin, but for purposes of his plea in bar, he accepted the evidence that he had done so.

In August 2018, the trial court dismissed the indictment. In its order, the trial court explained that the evidence fails to show that Williams "distributed" heroin in violation of OCGA § 16-13-30 (b):

> The attempt by the state to apply [OCGA] § 16-13-30 to the facts in the case is misguided. There is no suggestion that the defendant purchased, much less owned the drugs involved. Nor is there any evidence that the defendant assisted in acquiring the drugs for Mr. Ivey. The state alleges only that at the request of Mr. Ivey, the defendant injected him with heroin acquired by Mr. Ivey. . . . [T]he state's effort to extend the interpretation of "distribution" is a "forced construction" of the statute's import and does not represent anything remotely understood as a "natural" or "most obvious" meaning of the word as contemplated by [OCGA] § 16-13-21. This is because the term "distribute" in the context of [OCGA] § 16-13-30 is used to describe the sale of controlled substances, not the . . . consumption of such and certainly not the injection of heroin by one person into the body and at the request of another.

The trial court concluded as a matter of law that Williams did not distribute heroin, and it reasoned that this conclusion was "fatal to both counts in the indictment." The court then granted Williams's "Motion to Dismiss" and dismissed his plea in bar as moot.

2. To begin, the State asserts, and we agree, that the dismissal order amounts to an order sustaining the general demurrer, even

though the order does not say so expressly. The record shows that, when the trial court dismissed the indictment, only three pleadings and motions were before the court that would have authorized the trial court to bring an end to some or all of the prosecution before trial—the general demurrer, the plea in bar, and the motion to dismiss the felony murder charge on constitutional grounds. The dismissal order made no findings about the Medical Amnesty Act, which was the basis for the plea in bar, and indeed, the order expressly dismissed the plea in bar as moot. And the dismissal order said nothing at all about the constitutionality of OCGA § 16-5-1 (c), which was the basis for the motion to dismiss the felony murder charge on constitutional grounds. That leaves only the general demurrer as a possible basis for the dismissal of the indictment.

To assess the merits of a general demurrer, which "challenges the sufficiency of the *substance* of the indictment," a court asks whether the defendant can "admit each and every fact alleged in the indictment and still be innocent of any crime." Daniels v. State, 302 Ga. 90, 97 (4) (805 SE2d 80) (2017) (citations and punctuation

omitted; emphasis in original). If so, the general demurrer should be sustained. Id. But if "the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer." Id. (Citations and punctuation omitted.) See also Lowe v. State, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003) ("[I]f, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good." (Citation and punctuation omitted.)).[6]

As a general matter, a demurrer (whether general or special) must allege some flaw on the face of the indictment itself; a demurrer ordinarily cannot rely on extrinsic facts that are not alleged in the indictment. See Schuman v. State, 264 Ga. 526, 526 (448 SE2d 694) (1994) (a demurrer that "add[s] facts not appearing on the face of the indictment" is a "speaking demurrer" that

---

[6] By contrast, a "special" demurrer "challenges the sufficiency of the *form* of the indictment," wherein the accused claims "not that the charge in an indictment is fatally defective and incapable of supporting a conviction (as would be asserted by general demurrer), but rather that the charge is imperfect as to form or that the accused is entitled to more information." Kimbrough v. State, 300 Ga. 878, 880-881 (2) (799 SE2d 229) (2017) (citations and punctuation omitted; emphasis in original).

"presents no authority for quashing an indictment and is void"). See also State v. Grube, 293 Ga. 257, 258 (1) (744 SE2d 1) (2013) (defendant's demurrer was not an improper "speaking demurrer" because his challenge to the indictment could be determined "without reaching matters outside the four corners of the indictment"). Here, in dismissing the indictment, the trial court relied on facts that are not alleged in the indictment, including that the *sole* basis for the distribution charge was that Williams injected Ivey with heroin, that Williams did not own the heroin in question, that Williams played no part in its acquisition, and that Williams only injected Ivey at Ivey's request.[7]

There is an important exception to the general rule that a court cannot go beyond the four corners of the indictment in considering a demurrer. If the State stipulates or agrees to the facts that form the

---

[7] The indictment charged that Williams "did unlawfully during the commission of a felony, to wit: Distribution of Heroin, cause the death of . . . Ivey, a human being, by injecting . . . Ivey with Heroin." And the indictment charged that Williams "did unlawfully distribute Heroin, a controlled substance in Schedule I of the Georgia Controlled Substances Act, to . . . Ivey, contrary to the laws of said State."

basis for the charges in the indictment, a court can rely on those facts in its consideration of a demurrer, whether or not the facts appear on the face of the indictment. See Schuman, 264 Ga. at 526 (remanding to the Court of Appeals to determine whether, "under the facts *stipulated by the parties*, the trial court properly dismissed the indictment" (emphasis supplied)); State v. Brannan, 267 Ga. 315, 316 & 317 n.4 (477 SE2d 575) (1996) (trial court should have dismissed indictment where the underlying facts, as "stipulated in writing" by the parties, did not constitute the alleged offense).

In this case, however, the State never agreed or stipulated for purposes of a demurrer to a number of the facts upon which the trial court relied. In the first place, the hearing at which the trial court heard evidence was a hearing on the plea in bar, not a hearing on the demurrer, and any concessions-for-the-sake-of-argument made by the prosecuting attorney at that hearing are most naturally understood as concessions for the limited purpose of the plea in bar. In any event, the prosecuting attorney at most agreed that the charges against Williams were premised on his act of injection.

Although the State presented no evidence at the pretrial hearing to counter the assertions that Williams injected Ivey only at Ivey's request and that Williams played no part in acquiring the heroin, the State was not required to do so; it never agreed to try its entire case against Williams at this pretrial hearing. Compare Schuman, 264 Ga. at 526 & n.1 ("[T]he state agreed to submit its entire case, including the question of intent, for the trial court to determine whether the underlying dispute should be resolved in a criminal or civil forum."). Because the State never agreed or stipulated to those extrinsic facts for purposes of a demurrer, the trial court was not authorized to consider them in connection with the general demurrer. Accordingly, we reverse the dismissal of the indictment

and remand the case for further proceedings consistent with this opinion.[8]

Judgment reversed and case remanded. All the Justices concur.

Decided June 3, 2019.

Murder. Fulton Superior Court. Before Judge Goger.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellant.

Arora & Lascala, Manubir S. Arora; Devin Rafus, for appellee.

---

[8] Because the trial court erred by considering facts beyond the four corners of the indictment, we have no occasion in this case to consider whether the facts as shown by the evidence presented at the pretrial hearing demonstrate "distribution" of heroin. Nothing in this opinion should be understood to suggest that the trial court was wrong to conclude that injecting Ivey with Ivey's own heroin at Ivey's request would not as a matter of law amount to "distributing" heroin in violation of OCGA § 16-13-30 (b).